**United States District Court**
**District of Connecticut**

**Keith Massimino**,
*Plaintiff*

No. 21-cv-1132

*v.*

August 24, 2021

**Matthew Benoit** and **Frank Laone**,
*Defendants*.

# Complaint

## Introduction

Keith Massimino was arrested, handcuffed, and prosecuted for nearly three years for an activity protected by the First Amendment: taking a videorecording of a government building that was in plain view for all to see from a busy street in downtown Waterbury, Connecticut. The defendant police employees were so incensed to see Mr. Massimino recording the exterior of the Waterbury police department from the sidewalk outside that they unlawfully detained him, demanded that he identify himself, and arrested him when he politely declined. In this action, Mr. Massimino seeks redress for the violation of his First and Fourth Amendment rights that the defendants caused.

## Jurisdiction

1. The United States District Court has subject matter jurisdiction over this dispute because the plaintiff's claims arise under the law of the United States. 28 U.S.C. § 1331.
2. Venue is proper in the District of Connecticut because all of the events giving rise to the plaintiff's claims transpired within it. 28 U.S.C. § 1391(b)(2).

**Parties**

3. Plaintiff Keith Massimino is a resident of Wallingford, Connecticut.

4. Defendant Matthew Benoit was, at all relevant times, an employee of the Waterbury, Connecticut municipal police department.

5. Defendant Frank Laone was, at all relevant times, an employee of the Waterbury, Connecticut municipal police department.

**Facts**

6. Mr. Massimino is a professional videographer and photojournalist primarily covering sports events. He has an interest in freedom of information and speech.

7. Mr. Massimino is married; during the relevant time he and his spouse had a toddler, and another child who was born in 2019.

8. On the evening of Tuesday, October 30, 2018, Mr. Massimino was driving through Waterbury on his way home from a job, and became stuck in traffic on Interstate 84.

9. Mr. Massimino decided to film the exterior of the Waterbury police department, located at 255 East Main Street.

10. The Waterbury police department building occupies an entire city block. The front entrance faces East Main Street. The sides of the building face North Elm Street and Maple Street, respectively. The back of the building faces Water Street.

11. All four city streets surrounding the Waterbury police department have sidewalks on them.

12. There are no fences, shrubs, or any other obstruction interfering with a person's view of the building from any of the streets or sidewalks surrounding the Waterbury policy department.

13. This map fairly and accurately depicts the Waterbury police department's location:




14. Mr. Massimino arrived at the Waterbury police department after 6 p.m. He stood on the public sidewalk alongside East Main Street, in front of the main entrance.

15. Using a Canon video camera and tripod, Mr. Massimino recorded the main entrance of the building for approximately one minute.

16. Still filming, Mr. Massimino walked down the sidewalk alongside East Main Street, toward North Elm Street.

17. After turning the corner onto North Elm Street, Mr. Massimino filmed the exterior of the building, including an entrance to the building's garage at North Elm Street and Water Street, for approximately one minute.

18. While he was filming, a police car driven by Defendant Benoit exited the garage.

19. Mr. Massimino then turned and walked back toward the corner of North Elm Street and East Main Street. Standing a few feet from the corner, he continued to record both the front and side of the building.

20. As he stood at the corner, Mr. Massimino also recorded Defendant Benoit driving by in a police car.

21. As he stood at the corner, city buses and other vehicular traffic passed behind him on East Main Street.

22. Any person passing by on East Main Street could see the Waterbury police department as clearly as Mr. Massimino could.

23. Approximately six and a half minutes into his filming, as he was standing on the sidewalk, Mr. Massimino was approached by the defendants.

24. When he got within a foot of Mr. Massimino, Defendant Laone demanded Mr. Massimino explain why he was filming.

25. Shortly thereafter, Defendant Benoit demanded that Mr. Massimino identify himself.

26. Mr. Massimino responded that he was not required to identify himself when he was on public property and was not performing any illegal activity.

27. Defendants, in turn, stated that it was a "security issue" because "you're videotaping the police station."

28. Mr. Massimino again responded that he did not need to identify himself for performing a legal activity on a public sidewalk—namely, filming a government building. He emphasized that he had no "ill will" and no intent to do anything other than film.

29. Defendant Laone responded that "this is not a public building."

30. Defendant Benoit then stated, several times, that Mr. Massimino was "not allowed to videotape police stations." Defendant Laone verbally agreed.

31. When Defendants continued to press him, Mr. Massimino asked, "Can you articulate a crime I've committed?"

32. Laone responded, "Reasonable suspicion."

33. At this point, Mr. Massimino asked if he was being detained. Defendant Laone said yes. Mr. Massimino again requested that Defendants tell him why, and what crime he had committed.

34. Defendant Laone responded, "you're filming a police station," and, again, simply, "reasonable suspicion."

35. The entirety of Mr. Massimino's recording that evening, including his interaction with the defendants, is found in the video recording attached here as Exhibit 1.

36. Exhibit 1 to this complaint is a fair and accurate depiction of the parties' interaction on the evening of October 30, 2018.

***Mr. Massimino's Arrest***

37. Approximately two minutes into the conversation, Defendant Benoit again demanded that he identify himself, and Mr. Massimino declined.

38. Defendant Benoit placed Mr. Massimino under arrest, and Defendant Laone took Mr. Massimino's camera.

39. Mr. Massimino cooperated with Defendants as he was handcuffed and searched.

40. Defendants confiscated all the property Mr. Massimino had on him, including his handheld camera (containing an SD card); a small black and silver tripod; his cellphone; and a small Swiss army pocket knife.

41. Once taken inside the station, Defendant Benoit charged Mr. Massimino with misdemeanor interference, Conn. Gen. Stat. § 53a-167a(a).

42. Shortly thereafter, Mr. Massimino was given conditions of release, including a promise that he appear at all upcoming court dates.

43. Defendants retained all of Mr. Massimino's belongings other than a pay stub that was in his pocket.

***Court Proceedings***

44. As a result of the criminal charge against him, Mr. Massimino was required to attend proceedings at the Connecticut Superior Court in Waterbury on multiple occasions following his November 18, 2018 arraignment.

45. Mr. Massimino hired criminal defense counsel to defend him against the criminal charge.

46. In March 2019, Defendants agreed to return Mr. Massimino's tripod, cell phone, and camera to him. However, they retained the SD memory card from his camera.

47. On May 21, 2021, the prosecution entered a *nolle prosequi*, and the superior court thereafter granted Mr. Massimino's oral motion for dismissal.

48. Thus, the criminal case against him ended in his favor.

49. The same day, Mr. Massimino requested, and received, his memory card.

50. During the two and a half years between his first court date on November 8, 2018, and the dismissal of the case on May 21, 2021, Mr. Massimino was required to go to court at least a dozen times.

51. Because he was required to attend court, Mr. Massimino missed work on a number of occasions and had to make the forty-five minute roundtrip drive from his home in Wallingford to the court in Waterbury.

52. Because Defendants confiscated his tripod, cellphone, and camera–which he did not get back for over four months—Mr. Massimino was forced to purchase replacements for the tripod and cellphone.

## Causes of Action

### Count 1: Violation of the First Amendment (Against Both Defendants)

53. By stopping Mr. Massimino from viewing and memorializing buildings and people that were in plain view from the sidewalk, the defendants contravened Mr. Massimino's First Amendment rights.

### Count 2: Unreasonable Seizure in Violation of the Fourth Amendment (Against Both Defendants)

54. By detaining him to demand that he identify himself, and arresting him for declining to do so, the defendants violated Mr. Massimino's Fourth Amendment rights.

**Count 3: Malicious Prosecution**
**in Violation of the Fourth Amendment**
**(Against Defendant Benoit)**

55. By initiating a criminal prosecution against Mr. Massimino absent probable cause to believe that he had committed a crime, Defendant Benoit violated Mr. Massimino's Fourth Amendment rights.

**Request for Relief**

56. Accordingly, Mr. Massimino is entitled to have this Court:

a. award him damages for the violation of his rights,

b. order the defendants to repay his reasonable costs and fees in accordance with 42 U.S.C. § 1988, and

c. order any further relief as justice requires.

57. Mr. Massimino demands a jury trial on all disputes of material fact.

/s/ Dan Barrett
Dan Barrett (# 29816)
Elana Bildner (# 30379)
ACLU Foundation of Connecticut
765 Asylum Avenue, 1st Floor
Hartford, CT 06105
(860) 471-8471
e-filings@acluct.org

*Counsel for Mr. Massimino*