**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| KEITH MASSIMINO | : | |
| Plaintiff | : | NO:  3:21-cv-01132 (RNC) |
| | : | |
| VS. | : | |
| | : | |
| MATTHEW BENOIT AND | : | |
| FRANK LAONE | : | OCTOBER 7, 2021 |
| Defendants | : | |

<u>**DEFENDANTS, MATTHEW BENOIT AND FRANK LAONE'S**</u>
<u>**MEMORANDUM OF LAW IN SUPPORT OF THEIR**</u>
<u>**MOTION TO DISMISS**</u>

**I.**    <u>**FACTS**</u>

The Plaintiff, Keith Massimino, (hereinafter, "Massimino") instituted the present action against Waterbury Police Officers Matthew Benoit (hereinafter, "Benoit") and Frank Laone (hereinafter "Laone"), in their individual capacities for their alleged violation of First and Fourth Amendment rights and ostensibly pursuant to Title 42 USC §1983. (Complaint, Doc. #1).  Massimino alleges that while taking a video recording of the exterior of the Waterbury Police Department, he was arrested and charged with misdemeanor interference in violation of Conn. Gen. Stat. §53a-167a(a).  Massimino alleges that he was required to attend proceedings in the Connecticut Superior Court and that the prosecution subsequently entered a <u>nolle prosequi</u> and thereafter his Motion to dismiss the charges was granted.

Massimino alleges he had a First Amendment right to video record the exterior of the Waterbury Police Department, which he alleges to be a public building.

Massimino alleges that approximately six and a half minutes into his filming, as he was standing on the sidewalk, he was approached by the Defendants, Benoit and Laone.  He

1

further alleges that Laone demanded that he explain why he was filming and Defendant Benoit demanded that he identify himself.  Massimino admits he did not identify himself in response to Benoit's request (Complaint, Doc. #1, ¶¶ 25, 26, 27).  Massimino claims the Defendants responded that it was a "security issue" because he was videotaping a police station (Complaint Doc. #1 ¶27) and that the entirety of his recording, including his encounter with the defendant officers, is found in a video recording attached as Exhibit 1 to Massimino's Complaint.

Massimino alleges that he is a professional videographer and photojournalist primarily covering sporting events and has an interest in freedom of information and speech.  Although Massimino has not alleged in his Complaint that he told the defendant he was a journalist, one can hear in the video that he tells the officer he is a "journalist."  However, at no point does he show any identification or verification that he is in fact a "journalist."  To the contrary he admits he refused to show any form of identification or otherwise identify himself.

Massimino alleges that the Defendants responded to him that the Waterbury Police Department was not a public building and that he was not allowed to videotape the police stations. (Complaint, Doc. #1 ¶¶29-30) and when he asked the Defendants to articulate any crime he committed, Defendant Laone responded "reasonable suspicion." (Complaint, Doc. #1, ¶¶31-34).  In the video, Exhibit 1 of Complaint, Officer Laone can be heard indicating to Massimino that he did not know what Massimo's intent and purpose was for videotaping the police department.  The officer indicated that it was not a public building with the exception of the main entrance lobby area and that he had security concerns and did not know if Massimino was about to blow up the building or engage in a shooting.

The video clearly shows the Youth Division entrance, located on the side of the building, which is separate from the main entrance located on East Main Street.  When Massimino is asked why he was videotaping the police department, he indicated that it was for a story and that he was a journalist.  However, when asked to present identification which would have substantiated his claim as a journalist, he refused to present any credentials or identification.

Massimino alleges that by stopping him from viewing and memorializing buildings and people that were in plain view from the sidewalk, the Defendants contravened his First Amendment rights. (Complaint, Doc. #1 Count 1 ¶53)

As a result of Massimino's conduct he was placed under arrest and charged with Interfering with an Officer in violation of Conn. Gen. Stat. §53a-167a.  Massimino further alleges that his Fourth Amendment rights were violated by the Defendants demanding he identify himself and his right not to give identification.  (Complaint, Doc. #1, Count 2 ¶ 54) Finally, Massimino alleges the Defendants initiated criminal prosecution against him by arresting him without probable cause (Complaint, Doc. #1, Count 3 ¶55) in violation of his Fourth Amendment rights.

Although Massimino has not specifically alleged his claims are brought pursuant to 42 U.S.C §1983 all three causes of action appear to be brought as alleged civil rights violations and pursuant to 42 U.S.C. §1983 as Massimino seeks "reasonable costs and fees in accordance with 42 U.S.C. §1988 . . ."

## II.    **STANDARD OF REVIEW**

Only complaints that state plausible claims survive a motion to dismiss.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  In order to survive a motion to dismiss, a plaintiff must provide the grounds for entitlement to relief, which requires more than "a formulaic recitation of elements of a cause of action."  Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level."  *Id.*

On a motion to dismiss, it is well settled that all facts and allegations in the Complaint must be taken as true and viewed in a light most favorable to the plaintiff.  *See* Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008).  A federal district court should nonetheless grant a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." H.J. Inc. v. Northwestern Bell Tel., Co., 492 U.S. 229, 249-50 (1989) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

In adjudicating a Rule 12(b)(6) motion, a court must confine its consideration of facts to those alleged on the face of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.  *See* McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).

The Second Circuit permits courts to consider documents outside the four corners of the complaint, even those that are not annexed thereto, if the plaintiff relies on them and they are integral to the complaint without converting the motion to dismiss into one for summary judgment.  *See*, Holowecki v. Federal Express Corp., 440 F.3d 558 (2d Cir. 2006); *See also*, Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (in deciding a motion under Rule 12(b)(6) the Court may supplement the allegations in the complaint with facts from documents either referenced in the complaint or relied upon in framing the complaint).

4

A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6) tests only the adequacy of the complaint. United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004). A Rule 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a Complaint. Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). However, "[w]hile a Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964–5 (2007).

The critical inquiry in deciding a motion to dismiss under Rule 12(b)(6), with respect to each of plaintiffs' claims is whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Alt. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, L. Ed. 2d. 929 (2007).

In determining whether this standard has been met, the complaint is to be construed liberally, with "all factual allegations in the complaint [accepted] as true, and ... all reasonable inferences [drawn] in plaintiff's favor." Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010) (internal marks omitted).

III.   **ARGUMENT**

    A.   **The Defendant Officers' Initial Questioning of Massimino did not Violate his First or Fourth Amendment Rights**

The issue of whether a seizure and subsequent detention of an individual's person complies with the Fourth Amendment to the United States Constitution is governed by the standard set forth in Terry v. Ohio, 392 U.S. 1 (1968). Under Terry, if a law enforcement officer can point to specific, articulable facts as the basis for a reasonable suspicion "that

criminal activity may be afoot," he is justified in briefly detaining an individual to investigate. Terry, 392 U.S. at 30.

In general, the legality of such a stop is determined by a two-part test. First, courts examine "whether the officer's action was justified at its inception" and, next, they assess whether the officer's subsequent actions were "reasonably related in scope" to the circumstances that justified the stop. *Id.* at 19-20. The analysis under the first prong - whether the officer's action was justified at its inception – depends on the type of officer action at issue. If the initial action was of a type that invokes the protections of the Fourth Amendment, such as a seizure or a Terry stop[1], then the officer must be able to articulate a reasonable suspicion of criminal activity in order to justify his actions. *See*, United States v. Tehrani, 49 F.3d 54, 58 (2d Cir. 1995). Even so, the reasonable suspicion standard is far less exacting than what is required for probable cause. "The showing required to demonstrate 'reasonable suspicion' is considerably less than that which is necessary to prove probable cause." United States v. Rideau, 969 F.2d 1572, 1574 (5th Cir. 1992). In fact, "the Fourth Amendment requires only some minimal level of objective justification for the officer's actions, measured in light of the totality of the circumstances." *Id.* "The concept of reasonable suspicion, like probable cause, is not readily, or even usefully, reduced to a neat set of legal rules." United States v. Sokolow, 490 U.S. 1, 7 (1989) (internal quotations omitted). "Reasonable suspicion, therefore, is an intermediate standard that cannot be precisely defined, but must be

---

[1] A Terry stop is functionally equivalent to a seizure under the Fourth Amendment. Indeed, it can fairly be said that a Terry stop is the colloquial term for a Fourth Amendment seizure. *See*, United States v. Price, 599 F.2d 494, 498-99 (2d Cir. 1979) (treating question of when the Terry stop began and when defendant was seized as identical).

determined on a case-by-case basis taking into consideration the totality of circumstances."

United States v. Moore, No. 03-CR-32E, 2006 U.S. Dist. LEXIS 9184, at *11 (W.D.N.Y. Feb.

24, 2006).

Nonetheless, certain types of police action can be undertaken even without a showing

of reasonable suspicion. If, at its inception, an encounter between an officer and a citizen falls

short of a seizure then the protections of the Fourth Amendment do not apply and reasonable

suspicion is not needed to justify the police action. See United States v. Lee, 916 F.2d 814,

819 (2d Cir. 1990) ("Not every encounter between a police officer and an individual is

a seizure implicating the Fourth Amendment's protections."). Thus, any type of police conduct

that falls short of this threshold—that of seizing an individual or effectuating a Terry stop - is

legally permissible even in the absence of reasonable suspicion. See, United States v.

Lopez, 432 F.Supp.3d 99, 113 (D. Conn. Jan. 10, 2020) (officer driving by defendant's car

and shining spotlight inside "was not unlawful" as "the police are entitled to conduct further

investigation even in the absence of reasonable suspicion").

Many types of police conduct, including some at issue here, have been classified as

less than a seizure. For instance, "a police officer is free to approach a person in public and

ask a few questions; such conduct, without more, does not constitute a seizure." Lee, 916

F.2d at 819; see also, Florida v. Bostick, 501 U.S. 429, 434 (1991) ("[A] seizure does not

occur simply because a police officer approaches an individual and asks a few questions.").

Here, the encounter between Officers Benoit and Laone and Massimino began when

they approached Massimino on the sidewalk outside the Waterbury Police Department and

inquired as to why Massimino was videotaping the Waterbury Police Department building.

This is precisely the type of "further investigation even in the absence of reasonable suspicion" that officers are authorized to undertake and indeed, expected, to pursue. Lopez, 432 F.Supp.3d at 113. As such, there are no Constitutional limitations placed on this type of police conduct. *See, e.g.*, State v. Courchesne, 296 Conn. 622, 649 (2010) (officer action that included blocking in defendant's car with police car, approaching defendant and communicating with defendant found to be constitutionally permissible) (remanded on other grounds). None of these initial actions rises to the level of a seizure. Therefore, the interaction between Officers Benoit and Laone and Massimino was "justified at its inception," as the first prong of the two-part Terry test demands.

Moving on to the second prong of the Terry test - the legality of the officer's subsequent actions - the first question that must be addressed is when the seizure or Terry stop occurred.

"When considering the validity of a … stop, our threshold inquiry is twofold.  First, we must determine at what point, if any . . . the encounter between [the police officer] and the defendant constitute[d] an investigatory stop or seizure. . . . Next, [i]f we conclude that there was such a seizure, we must then determine whether [the police officers] possessed a reasonable and articulable suspicion at the time the seizure occurred. "State v. Courchesne, 296 Conn. 622, 642-643 (2010) (quoting State v. Santos, 267 Conn. 495, 503 (2004)) (internal quotation marks omitted); *see also*, Lopez, 432 F.Supp.3d at 109 ("The first step… is determining when the encounter between the officers and [the defendant] became a Terry stop.").

"A seizure requires either physical force . . . or, where that is absent, submission to the

8

assertion of authority." <u>Lopez,</u> 432 F.Supp.3d at 110 (quoting <u>United States v. Swindle</u>, 407 F.3d 562, 572 (2d Cir. 2005) (internal quotations omitted)). It has been held that "to comply with an order to stop - and thus to become seized - a suspect must do more than halt temporarily; he must submit to police authority, for 'there is no seizure without actual submission.'" <u>United States v. Baldwin</u>, 496 F.3d 215, 218 (2d Cir. 2007) (quoting <u>Brendlin v. California</u>, 551 U.S. 249, (2007)). "We have . . . defined a person as seized under our state constitution when by means of physical force or a show of authority, his freedom of movement is restrained." <u>State v. Santos</u>, 267 Conn. 495, 503 (2004) (quoting <u>State v. James</u>, 237 Conn. 390, 404 (1996)).

Here, Plaintiff was not seized, for purposes of the Fourth Amendment, when Benoit and Laone approached him and inquired as to the reason for videotaping the police department building.  The videotape shows clearly that Massimino did not submit to police authority or that the officers showed any physical force.  <u>Baldwin</u>, 496 F.3d at 218: <u>Swindle</u>, 407 F.3d at 572.

Even assuming a conclusion that Massimino was seized, <u>Terry</u> provides that investigative detentions are justified where predicated upon a reasonable suspicion of criminal activity. <u>Terry</u>, 392 U.S. at 30. However, even an investigative detention that is adequately supported by reasonable suspicion "must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." <u>Gilles v. Repicky,</u> 511 F.3d 239, 245 (2d Cir. 2007) (quoting <u>Florida v. Royer,</u> 460 U.S. 491, 500 (1983). Here, plaintiff's detention

conforms with <u>Terry</u> and its progeny by virtue of being rooted in reasonable suspicion and appropriately tailored in scope and duration. As discussed above, the officers had a reasonable suspicion that the Plaintiff might be engaging in an activity that could be dangerous to the officers and the public.  As the officers stated, the plaintiff could be videotaping the police department building to later blow up the building or engage in a shooting.  Once the plaintiff refused to show any identification or verify his credentials as a journalist the officers' suspicions were heightened. Furthermore, the detention was temporary - spanning only a few minutes - and lasted no longer than was necessary.  <u>United States v. Tehrani,</u> 49 F.3d 54, 57 (2d Cir. 1995) (holding that thirty minute detention in an airport security office was lawful because police diligently sought to confirm the defendant's identity during this time).

> **B.** **<u>Massimino Has Failed to Set Forth a Claim For Violation
> Of his Fourth Amendment Rights for his Arrest and for
> Malicious Prosecution Upon Which Relief can be Granted
> Pursuant to §1983 as Probable Cause Existed for His Arrest
> and Prosecution</u>**

The elements of malicious prosecution are well established and are identical under both Federal and Connecticut law holding that a plaintiff must prove among other elements the absence of probable cause to arrest did not exist. <u>Raysor v. Port Authority of New York and New Jersey</u>, 768 F.2d 34, 39 (2d Cir. 1985), cert. denied, 475 U.S. 1027, 89 L. Ed. 2d 337, 106 S. Ct. 1227 (1986). <u>Walczyk v. Rio</u>, 496 F.3d 139, 156 (2d Cir. 2007) (internal quotation marks omitted).

"An action for malicious prosecution requires a Plaintiff to prove that: (1) the Defendant initiated or procured the institution of criminal proceedings against the Plaintiff; (2) the

criminal proceedings have terminated in favor of the Plaintiff; (3) the Defendant acted without probable cause; and the Defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." McHale v. W.B.S. Corp., supra 187 Conn. App. 447, 446 A.2d 815; see also 52 Am.Jur.2d 145, Malicious Prosecution §8 (2000); D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) §161, p. 430. The Connecticut Supreme Court has described these elements of the tort as the "'stringent requirements'...." Gallo v. Barile, 284 Conn. 459, 475, 935 A.2d 103 (2007); 52 Am. Jur. 2d 143, supra Sec at 5 ("Actions for malicious prosecution are not favored by the courts. Thus, a malicious prosecution action is subject to limitations that are more stringent than those surrounding other kinds of actions, and recovery is allowed only if the requirements have been fully complied with.") Bhatia v. Debek, 287 Conn. 397, 404 (2008); Giannamore v. Schevchuk, 108 Conn. App. 303, 310 (2008).

The third element of a claim for malicious prosecution is lack of probable cause. McHale v. W.B.S. Corp., supra 187 Conn. App. 447, 446 A.2d 815. "Probable cause has been defined as the knowledge of facts sufficient to justify a reasonable [person] in the belief that he has reasonable grounds for prosecuting an action.... Mere conjecture or suspicion is insufficient. . . .Moreover, belief alone, no matter how sincere it may be, is not enough, since it must be based on circumstances which make it reasonable.  Although want of probable cause is negative in character, the burden is upon the plaintiff to prove affirmatively, by circumstances or otherwise, that the defendant had no reasonable ground for instituting the criminal proceeding." (Citations omitted.) Zenik v. O'Brien, supra 137 Conn. App. 597, 79 A.2d 769.

Massimino's Fourth Amendment claim is based upon the absence of probable cause for his arrest.  As for both his claim of false arrest and malicious prosecution, the existence of probable cause is a bar to these claims.

"The existence of probable cause is an absolute protection against an action for malicious prosecution, and what facts, and whether particular facts, constitute probable cause is always a question of law." (Internal quotation marks omitted.) Falls Church Group, Ltd. v. Tyler, Cooper & Alcorn, LLP, supra 281 Conn. App. 94, 912 A.2d 1019; Mulligan v. Rioux, 229 Conn. 716, 739, 643 A.2d 1226 (1994), on appeal after remand, 38 Conn. App. 546, 662 A.2d 153 (1995). It is well established in our jurisprudence that "[t]he existence of probable cause is an absolute protection against an action for malicious prosecution...." (Internal quotation marks omitted.) Vandersluis v. Weil, 176 Conn. 353, 356, 407 A.2d 982 (1978); Hebrew Home & Hospital v. Brewer, 92 Conn. App. 762, 767, 886 A.2d 1248 (2005).

 "[P]robable cause is a fluid concept ... not readily, or even usefully, reduced to a neat set of legal rules.... While probable cause requires more than a 'mere suspicion' of wrongdoing, its focus is on 'probabilities,' not 'hard certainties'...." Id. (internal citations and quotation marks omitted).  "In assessing probabilities, a judicial officer must look to the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id. (internal quotation marks omitted).  In sum, probable cause "requires only such facts as make wrongdoing or the discovery of evidence thereof probable." Id. at 157.

It has long been recognized that, where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for

the court. <u>Walczyk v. Rio</u>, et al, 496 3d 139,157 2d Cir. 2007); *See,* <u>Stewart v. Sonneborn</u>, 98 U.S. 187, 194, 25 L. Ed. 116 (1878) (observing that whether facts alleged to show probable cause are true is a matter of fact, "but whether, supposing them to be true, they amount to a probable cause, is a question of law" (internal quotation marks omitted)); accord <u>Director General of Railroads v. Kastenbaum</u>, 263 U.S. 25, 28, 44 S.Ct. 52, 68 L. Ed. 146 (1923) probable cause if proved").

Liability under §1983 may also be anchored in a claim for malicious prosecution, as this tort "typically implicates constitutional rights secured by the <u>Fourteenth Amendment</u>, such as deprivation of liberty." <u>Easton</u>, 947 F.2d at 1017. Though Section 1983 provides the federal claim, the elements of the underlying malicious prosecution tort are borrowed from state law. *See,* <u>Raysor v.Port Authority of New York and New Jersey</u>, 768 F.2d 34, 39 (2d Cir. 1985), cert. denied, 475 U.S. 1027, 89 L. Ed. 2d 337, 106 S. Ct. 1227 (1986).  <u>Holman v. Cascio</u>, 390 F. Supp. 2d 120, 122 (D. Conn. 2005) (quoting <u>QSP, Inc. v. Aetna Casualty & Surety Co.</u>, 256 Conn. 343, 360 n. 16, 773 A.2d 906 (Conn. 2001); <u>McHale v. W.B.S. Corp.</u>, 187 Conn. 444, 447, 446 A.2d 815 (Conn. 1982); <u>Vandersluis v. Weil</u>, 176 Conn. 353, 356, 407 A.2d 982 (Conn. 1978)). In order to prevail on a malicious prosecution claim under both Section 1983 and state law, a plaintiff is required to demonstrate "that there was no probable cause for the proceeding."  <u>Mitchell</u>, 841 F.3d at 79 (quoting <u>Kinzer v. Jackson</u>, 316 F.3d 139, 143 (2d Cir. 2003)).  In a malicious prosecution action, "it is necessary to prove want of probable cause, malice and a termination of [the] suit in the plaintiffs' favor."  <u>DeLaurentis v. New Haven</u>, 220 Conn. 225, 248, 597 A.2d 807 (1991).

The fact that the Plaintiff was ultimately found not guilty of the charge is not dispositive. "[P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful." Krause v. Bennett, 887 F.2d 362, 371 (2d Cir. 1989). Moreover, the failure of an arrest to lead to a conviction does not establish a lack of probable cause for that arrest because "[t]he quantum of evidence required to establish probable cause to arrest need not reach the level of evidence necessary to support a conviction...." United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983).

"Probable cause is a flexible, common-sense standard." Texas v. Brown, 460 U.S. 730, 742 (1983). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." United States v. Bakhtiari, 913 F.2d 1053, 1062 (2d Cir. 1990). "The principal components of a determination of . . . probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to… probable cause." Ornelas v. United States, 517 U.S. 690, 696 (1996).

Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonable trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a [crime] has been committed.  An objective reading of the undisputed facts in this case clearly demonstrates that those facts would be sufficient to establish probable cause as a matter of law.

Massimino was arrested for violating Conn. Gen. Stat. §53a-167a, Interfering with An Officer, which provides as follows:

> Sec. 53a-167a.  Interfering with an officer:  Class A misdemeanor
> or class D felony.
> (a)  A person is guilty of interfering with an officer when such
> person <u>obstructs, resists,</u> hinders or endangers <u>any peace officer</u>,
> special policeman appointed under Section 29-18b or firefighter in
> <u>the performance of such peace officer's</u>, special policeman's or
> firefighter's <u>duties</u>. (Emphasis added)

Here, the officers had probable cause to arrest Massimino for violation of Conn. Gen. Stat. §53a-167a.  Massimino obstructed, resisted, hindered and endangered the defendant officers in the performance of their duties.  The officers expressed concern for "safety reasons" as well as whether Massimino might be planning to blow up or shoot at the police station.  In the process of conducting their investigation to ascertain whether "criminal activity may be afoot," Massimino obstructed, resisted, hindered, and potentially endangered the defendant police officers in the performance of their investigatory duties.  Massimino would not comply with the officers' request for identification including his credentials as a purported journalist.  Massimino steadfastly asserted that he had a right to videotape a "public building" despite the fact that he was told by the officers that only the main entrance lobby area is open to the public.

Further, the video (Exhibit 1 of the Complaint) clearly shows the non-public areas including the Youth Department through which juveniles who are protected from public disclosure of their involvement with the criminal justice system are protected from public access.  Since Massimino was uncooperative in the officers' investigation and inquiry and their concern for safety, together with his refusal to identify himself or show any identification, the defendant officers had probable cause to arrest him for interfering with a police officer in the performance of their investigatory duties.

**C.**     <u>**The Defendants are Entitled to Qualified Immunity**</u>

      **1.**   <u>**The Defendants did not violate Massimino's constitutional rights**</u>

Under the undisputed facts as alleged, neither Officer Benoit nor Laone violated Massimino's constitutional rights.  Massimino is unable to establish that any violation of his First or Fourth Amendment rights occurred.

Section 1983 allows plaintiffs to sue municipal officials in their personal capacities for deprivations of constitutional rights.  42 U.S.C §1983; *see* <u>Nagle v. Marron</u>, 663 F.3d 100, 116 (2d Cir. 2011) One right enforceable through Section 1983 is the First Amendment's guarantee of freedom of speech, which prohibits the government from punishing an individual in retaliation for the exercise of their First Amendment rights. <u>Locurto v. Safir</u>, 264 F.3d 154, 166 (2d Cir. 2001) To state a First Amendment retaliation claim, a plaintiff "must plausibly allege that (1) his or her speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him or her; and (3) there was a causal connection between this adverse action and the protected speech."  <u>Montero v. City of Yonkers</u>, 890 F.3d 386,694 (2d Cir. 2018)(cleaned up).  <u>Quinones v. City of Binghamton</u>, 997 F.3d 461, 2021 U.S. App. LEXIS 13977, 2021 WL 1898117.

Where a plaintiff claims that he or she was retaliated against in violation of the First Amendment, he must plausibly alleges that (1) his or her speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech.  <u>Montero v. City of Yonkers</u>, 890 F.3d 386 U.S. App. LEXIS 12629, 2018 WL 2223721.

"The Fourth Amendment on the other hand prohibits unreasonable search and seizure of a person and/or his property. Weather the officers action violated the plaintiffs constitutional rights is to be analyzed under that Amendment's 'reasonableness standard.'" Brown v. City of New York, 798 F.3d 94, 100 (2d Cir. 2015) (quoting Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (other internal quotation marks omitted)). The "proper application" of this standard "requires careful attention to the facts and circumstances of each particular case. Graham, 490 U.S. at 396 (emphasis added).

Qualified immunity first requires resolution of a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L. Ed. 2d 272, 377-378 188 L. 2d 1056 (2014); Plumhoff v. Rickard, 872 U.S. 765 134 S.Ct. 2012 188 L. Ed. 2d (2014); Scott v. Harris, 550 U.S. 372 127 S. Ct. 1769 167 L. Ed. 2d. 686 (2007).  In resolving questions of qualified immunity, courts are required to initially resolve that threshold question.  If, and only if, the court finds a violation of a constitutional right, "the next sequential step is to ask whether the right was clearly established in light of the specific context of the case." *Ibid.*

Massimino's claims of both an unreasonable search and seizure in violation of his Fourth Amendment rights as well as a violation of his First Amendment rights require analyzing the totality of the circumstances from the perspective "of a reasonable officer on the scene." Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L. Ed. 2d 443.

In Saucier v. Katz, 533 U. S. 194, 200, 121 S.Ct. 2151, 150 L. Ed. 2d 272 (2001), the Supreme Court held that "the first inquiry must be whether a constitutional right would have

been violated on the facts alleged." Only after deciding that question may Appellate Court turn to the question whether the right at issue was clearly established at the relevant time. *Ibid.*

In <u>Graham v. Connor</u>, 490 U. S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); the Supreme Court determined the objective reasonableness of a particular seizure under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." 490 U. S., at 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (internal quotation marks omitted). The inquiry requires analyzing the totality of the circumstances. See <u>ibid</u>. See also <u>Tennessee v. Garner</u>, 471 U. S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)

The Court must analyze this question from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Ibid.* Consideration of this issue must allow for the fact that police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving about what is necessary in a particular situation. *Id.*, at 396-397, 109 S.Ct. 1865, 104 L. Ed. 2d 443.

The actions of the Defendant offices as alleged were objectively reasonable and, therefore, neither the Plaintiff's First nor Fourth Amendment rights were violated.

    **2.**    <u>**Assuming arguendo that Massimino's First and/or Fourth Amendment rights were violated Benoit and Laone nonetheless are entitled to Qualified Immunity**</u>

Even where an officer is found to have violated a person's constitutional rights, however, the doctrine of qualified immunity will shield that officer from liability for damages if his "conduct d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Mullenix v. Luna, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015)(internal quotation marks omitted); *see, e.g.*, Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L. Ed. 2d 523 (1987).

Qualified immunity protects officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Taravella v. Town of Wolcott, 599 F.3d 129, 133 (2d Cir. 2010).  When a defendant invokes qualified immunity, courts consider whether the plaintiff has shown, "(1) that the defendant violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.  Wood v. Moss, 572 U.S. 744, 757, 134 S.Ct. 2056, 188 L. Ed 2d 1039 (20140) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 131 S.Ct. 2074, 179 L. Ed. 2d 1149 (2011)).  "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'"  Carroll v. Carman, 574 U.S. 13, 135 S.Ct. 348, 350 190 L. Ed. 2d 311 (quoting Anderson v. Creighton, 483 U.S. 635, 640 107 S.Ct. 3034, 97 L. Ed. 2d 523 (1987).

To determine whether the relevant law was clearly established, consideration must be given to whether a right is defined with specificity, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of

preexisting law." Terebesi, 764 F. 3d at 222.  An officer is entitled to qualified immunity if "any reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, could have determined that the challenged action was lawful." Figueroa v. Mazza, 825 F. 3d 89, 100 (2d Cir. 2016).  The inquiry on qualified immunity is not whether the officer should have acted as he did, nor is it whether a singular, hypothetical entity exemplifying the "reasonable officer" have acted in the same way.

     The United States Supreme Court has repeatedly held that a police officer is entitled to qualified immunity if "a reasonable officer could have believed [his actions] lawful, in light of clearly established law and the information the . . . officer [] possessed." Anderson v. Creighton, 483 U.S. 635 (1987); White v. Pauly, 137 S.Ct. 548, 551 (2017) (per curiam); Kisela v. Hughes, 138 S.Ct. 1148, 1152 (2018).

     In order for the law to be clearly established, "[t]he contours of [a] right must be sufficiently clear that a reasonable [officer] would understand that what he is doing violates that right." Anderson, 483 U.S. at 640.  In other words, "existing precedent must have placed the constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011.)

     Moreover, clearly established law must be determined "in light of the specific context of the case, not as broad general proposition." Brosseau v. Haugen, 542 U.S. 194, 198 (2004).  Indeed, the Supreme Court has repeatedly admonished the Appellate Courts for defining the clearly established law at too high a level of generality. *See,* Kisela, 138 S.Ct., at 1152; City and County of San Francisco v. Sheehan, 135 S.Ct. 1765, 1775-76 (2015); al-Kidd, 563 U.S. at 742.  Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 743.

In District of Columbia v. Wesby, 138 S.Ct. 577 (2018), the Court again emphasized, "[w] have not yet decided what precedents - other than our own - qualify as controlling authority for purposes of qualified immunity." 138 S.Ct. at 591 n.8. The Court held that the officer in the case before it was entitled to qualified immunity for wrongful arrest because the lower court had relied on a single decision from that court, which the Supreme Court found largely inapposite. The Court emphasized that ''a body of relevant case law' is usually necessary to" clearly establish the law for purposes of qualified immunity. *Id.* at 590.

Most recently, in City of Escondido v. Emmons, 139 S.Ct. 500, 503 (2019) the Court once again noted that it had not decided what precedents other than its own could clearly establish the relevant law, but granted qualified immunity based upon the absence of applicable law within the circuit in which the case arose concerning the precise factual situation confronted by the officer.

Existing authority must be highly factually analogous to the situation confronted by the officers in a particular case in order to constitute clearly established law for purposes of defeating qualified immunity. As the Court emphasized in Plumhoff v. Richard, 134 S.Ct. 2012, 2023 (2014), "[T]he crucial question [is] whether the official acted reasonably in the *particular circumstances* that he or she faced." (Emphasis added.)

The Court highlighted the fact-specific nature of the inquiry, which made it essential that there be some authority directly on point in order to defeat immunity. Kisela v. Hughes, 148 S.Ct. 1148 (2018) (per curiam). The result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue. *Id.* at 1153.

Although several other circuits have addressed the issue of a First Amendment right to record police activity, only the Fifth Circuit has addressed the issue of videotaping a police station.  Turner v. Driver, 848 F.3d 678 (5th Cir. 2017) The Ninth[2], Eleventh[3], First[4], Seventh[5], and Fifth[6] Circuits have held that the right to record the police is "clearly established." Contrastingly, the Third[7] and Fourth[8] Circuits have held that the Right to Record the Police is *NOT* "clearly established." Notably, this leaves the Second and Sixth Circuits "undecided" on the issue of whether a "clearly established" right exists to record the police.

Absent even one decision by the Second Circuit on the issue of whether videotaping police activity and even more specifically a police station is a clearly defined right, the

---

[2] *Id.* Citing Fordyce v. City of Seattle, 55 F.3d 436 (9th Cir. 1995) ("The Ninth Circuit found that Fordyce had a 'First Amendment' right to film matters of public interest' but did not provide an analysis for this conclusion").

[3] *Id.* Citing Smith v. City of Cumming, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The Eleventh Circuit held that '[t]he First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest.'").

[4] *Id.* Citing Glik v. Cunniffe, 655 F.3d 78, 85 (1st Cir. 2011) ("The court boldly chose to address the difficult constitutional issue at hand and framed the issue by asking: 'Is there a constitutionally protected right to videotape police carrying out their duties in public?'. . . In a unanimous decision, the First Circuit ultimately held that a citizen's right to record the police 'is a basic, vital, and well-established liberty safeguarded by the First Amendment' and the officers were not entitled to qualified immunity because this right was clearly established.").

[5] *Id.* Citing American Civil Liberties Union of Illinois v. Alvarez, 679 F.3d 583 (7th Cir. 2012) ("The Seventh Circuit held that the First Amendment protects the audio recording of the police and concluded that the wiretapping statute, which criminalized the audio recording of police officers, warranted heightened scrutiny because of its burden on First Amendment Rights.").

[6] *Id.* Citing Turner v. Driver, 848 F.3d 678, 687-88 (5th Cir. 2017) ("The Fifth Circuit pointed out that neither the Supreme Court, nor the Fifth Circuit has found that the First Amendment protects an individual's right to record the police . . . although the right to record the police was not clearly established at the time Turner was detained by the police, going forward, the right is clearly established in the Fifth Circuit.").

[7] *Id.* Citing Kelly v. Borough of Carlisle, 622 F.3d 248, 262 (3d Cir. 2010) ("The Third Circuit affirmed the district court's ruling and reasoned that (1) the right to record the police had only been 'hypothesized,' (2) cases that support a 'general right to record' were 'insufficiently analogous' to this case, and (3) the analogous cases Kelly cited were not sufficient to find the right clearly established.").

[8] *Id.* Citing Szymecki v. Houck, 353 F. App'x 852, 853 (4th Cir. 2009) ("The Fourth Circuit. . . rejected the notion that the right to record the police is clearly established in the circuit. The court did not provide an analysis of facts or law and failed to outline how cases should be brought in the future. In spite of this finding, other district courts within the Fourth Circuit have found that video recordings of police activity, which are done peacefully and without interfering with the performance of police duties, are protected by the First Amendment.").

defendants cannot have known that their actions violated a clearly defined right and, therefore, are entitled to Qualified Immunity.

The decision of the Fifth Circuit, although not binding precedent in the Second Circuit, sets forth a useful analysis of qualified immunity in a claimed First Amendment violation.

Turner, the plaintiff in that case, was videotaping the Fort Worth Police Station from a public sidewalk across the street from the station when he was approached by a defendant police officer who repeatedly asked for his identification.  When Turner asked if he was being detained, the defendant officer responded that Turner was being detained for investigation. The defendant officer continued to ask for Turner to produce identification which he refused at which point he was "suddenly and without warning" handcuffed and placed in a police cruiser and was told, "this is what happens when you don't I.D. yourself."  Turner was then placed in a police cruiser and they "left him there to sweat for a while with the windows rolled up."  Turner alleged that no air was getting to the back seat and that he banged on the door so the officers would roll down the windows.  Turner was subsequently removed from the police cruiser, the handcuffs were removed, his camera was returned to him, and he was released without being arrested or charged with any offense.

Turner instituted a §1983 claim in which he asserted a violation of his First, Fourth and Fourteenth Amendment rights.  The district court granted the Defendants' Motion to Dismiss based upon Qualified Immunity.  Turner appealed to the Fifth Circuit Court of Appeals.

On the First Amendment issue, the Court noted that the District Court ruled that the First Amendment right to video record police activity was not clearly established and concurred with that conclusion.  "Where no controlling authority specifically prohibits the

defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established."  "At the time in question, neither the Supreme Court nor this court had determined whether First Amendment protection extends to the recording or filming of police."  *Id.* at 686.

In the present case the same is true, there was not at the time of the subject incident a clearly defined constitutional right in the Second Circuit to videotape police activity or more specifically a police station.  Therefore, no such clearly established right existed.

Although in <u>Turner</u>, the plaintiff was videotaping the exterior of the Fort Worth Police Department, and police activity in and around the police station, the Fifth Circuit's decision appears to be based upon the broader concept of police activity as opposed to the more narrower issues of a police department building.  In that regard, the Court did note that "'the filming of government officials engaged in their duties in a public place, including police officers preforming their responsibilities fits comfortably within the basic First Amendment principles'" "This right however 'is not without limitations.'"  "Like all speech, filming the police 'may be subject to reasonable time, place and manner restrictions.'"  *Id.* at 690.

In <u>Turner</u>, the defendants reasoning for detaining the plaintiff was based solely on his failure to show his ID.  In the present case, the defendant officers had "safety concerns," including a potential attack of the police department building as well as areas of the police department not open to the public, such as the Youth Department.  In the present case, the defendants had significantly greater concerns and reasons to detain Massimino than was the case in T<u>urner</u>, as will be addressed further under the Plaintiff's Fourth Amendment claims.

The <u>Turner</u> Court proceeded to determine whether the plaintiff's Fourth Amendment claim was also subject to the Qualified Immunity defense.  The Court noted that Turner's Amended Complaint asserted that he was videotaping "the routine activities at the Fort Worth Police Department building."  The Court found that "Turner's filming in front of the police station 'potentially threatened security procedures at a location where order was paramount.'"  "An objectively reasonable person in [the defendants'] position could have suspected that Turner was casing the station for an attack, stalking an officer or otherwise preparing criminal activity, and thus could have found Turner's filming of the "routine activities" of the station sufficiently suspicious to warrant questioning and a brief detention.  The officers' detention of Turner under these circumstances was not 'plainly incompetent' or a knowing violation of the law."  The Court concluded that the initial questioning or detention of Turner before he was handcuffed was not objectively unreasonable in light of clearly established law.

In the present case, the same would be true with regard to any pre-arrest investigation and discussions and detention of Massimino by the defendants.  Qualified Immunity would apply to any pre-arrest conduct of the defendants.

In <u>Turner</u>, the Court concluded that placing him in handcuffs and putting him in the police cruiser "were disproportionate to any potential threat that Turner posed or to the investigative needs of the officers."  As noted, Turner was never charged with any offense or arrested.  In the present case, Massimino was not placed in handcuffs and arrested until after the defendant officers completed their initial investigation.  As long as a probable cause existed for Massimino's arrest, there would be no violation of his Fourth Amendment rights.  Additionally, although the Court in <u>Turner</u> found qualified immunity inapplicable to the Fourth

Amendment claim in that case, its finding was based on the fact that, "[t]he only potential reason the officers gave Turner . . . that can be derived from the Amended Complaint is Turner's failure to identify himself "and police cannot arrest an individual <u>solely</u> for refusing to provide identification.  *Id.* at 694-95."  (Emphasis added)

A distinction must be made when an officer simply stops an individual and demands identification without any specific basis for believing the individual maybe involved in some criminal activity.  *See*, <u>Hiibel v. Sixth Judicial District Court of Nev. Humboldt Cty</u>, 542 U.S. 177, 188 124 S.Ct 2451, 159 L. Ed. 2d. 292 (2004).  In the present case, the defendants specifically told Massimino the police station was not a public building, as he was asserting, that there was only an entrance in the front of the building for public access to a lobby area and they had reasonable suspicion and "safety concerns," including whether his videotaping was to blow up or shoot up the building.  Although Massimino's conduct was much more than simply not producing identification, he was made aware of the officers' specific concerns, the purpose of their questioning and their safety concerns.  Massimino nonetheless continued to obstruct, resist and hinder the officers' investigation and potentially endanger officer safety in the performance of their duties and, therefore, probable cause existed for his arrest for interfering with a police officer.

Alternatively, even if the Court were to conclude that the plaintiff has alleged sufficient facts to indicate an absence of probable cause, the defendants are nonetheless entitled to qualified immunity.

First the conclusion of the Fifth Circuit on this issue, as with all issues, is not binding in this Court.  Second, the facts of this case are materially different than those in <u>Turner</u> in

which the sole reason for Turner's detention was his failure to show identification.  The Court's decision was based on the allegations of the Amended Complaint whereas in the present case not only is there a more factually specific Complaint, but a video submitted by Massimino with his Complaint.  Although the Turner Court did not have the benefit of a video and the defendants' version of the encounter with Turner, the Court nonetheless assumed that Turner's filming in front of the police station "potentially threatened security procedures at a location where order was paramount" and that it was reasonable for the officers to have suspected that Turner was "otherwise preparing for criminal activity . . . and found the filming of the station "sufficiently suspicious to warrant questioning and a brief detention."

The facts before the Court in this case are greatly enhanced from the facts in Turner. As noted previously, the application of the qualified immunity defense is highly fact specific. The defendants herein contend that their actions in placing Massimino under arrest were "objectively reasonable" and if not "objectively reasonable" there was no clearly defined right of the plaintiff to be free from seizure and arrest under the facts of this case.  More specifically, there was no clearly defined right that when an individual is videotaping a police station, including non-public areas such as the Youth Department, identifies himself as a journalist, but refuses to show his credentials, is told by the defendant police officers that the police stations is not a public building, as he claims, that there is limited public access to the building, that the officers have reasonable suspicion concerning potential criminal activity as well as safety concerns and he continues to refuse to tell the police anything other than the police station is a public building, he is a journalist, but refuses to show his journalist's

credentials, no clearly defined right existed under the specific facts of this case of which a reasonable officer would have been aware.

Even if it is determined that an officer made an arrest without probable cause, the Court's inquiry concerning that officer's individual liability is not at an end.  The defense of qualified immunity "shields law enforcement officers from §1983 claims for money damages provided that their conduct does not violate clearly established constitutional rights of which a reasonable person would have been aware."  Zalaski, 723 F.3d at 388.  The doctrine aims to give officials room to act with confidence in gray areas by absolving from personal liability "all but the plainly incompetent or those who knowingly violate the law." Mullenix v. Luna, 136 S.Ct. 305, 308 193 L. Ed. 2d 255 (2015) (quoting Malley 475 U.S. at 341).

In the context of §1983 actions predicated on allegations of false arrest, an arresting officer is entitled to qualified immunity so long as "arguable probable cause" was present at the time the arrest was made.  Zalaski, 723 F.3d at 390 (internal quotation marks omitted.)  A police officer has arguable probable cause "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable test was met."  Id. (internal quotation marks omitted).  Put another way, an arresting officer will find protection under the defense of qualified immunity unless "no reasonable competent, officer" could have concluded, based on the facts known at the time of the arrest, that probable cause existed.  See Malley, 475 U.S. at 341.

In addition, the purpose of qualified immunity and arguable probable cause, police officers are entitled to draw reasonable inferences from the facts they possess at the time of a seizure based upon their own experiences.  See Ornelas v. United States, 517 U.S.

690699, 134 L. Ed. 2d. 911, 116 S.Ct. 1657 (1996) (noting that "a police officer views the facts through the lens of his police experience and expertise.  The background facts provide a context for the historical facts and when seen together yield inferences that deserve deference".

When a plaintiff alleges that a law enforcement officer's official conduct renders him personally liable in damages, the inquiry is not whether the officer should have acted as he did.  Nor is it whether a singular, hypothetical entity exemplifying the "reasonable officer" – a creature akin to the "reasonable man" of the law of torts.  *See* Restatement (Second) of Torts §283 cmt. c, (Am. Law Inst. 1975) – would have acted in the same way.  It is instead whether any reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, could have determined that the challenged action was lawful.  *See* Malley, 475 U.S. at 341; compare Walczyk v. Rio, 496 F.3d 157 n. 16 (2d Cir. 2007), with *Id.* at 169-170. (Sotomayor, J., concurring).

Applying this standard to the facts of the present case, the defendants are also entitled to Qualified Immunity on Massimino's §1983 Fourth Amendment claims of false arrest and malicious prosecution.  Figueroa v. Mazza, 825 F.3d, 106 U.S. App. LEXIS 10152 (2d. Cir. 2016)

## IV.   CONCLUSION

Since the Supreme Court and Second Circuit have yet to determine whether there exists a "clearly established" right to record the police, Qualified Immunity applies to all of Massimino's §1983 claims.  Benoit and Laone's actions under the undisputed facts of the

case were objectively reasonable and cannot be said to have constituted a violation of any

clearly established rights of the plaintiff.  Accordingly judgment should enter in favor of

Officers Benoit and Laone on all claims relating to the Plaintiff's First and Fourth Amendment

claims as well as his claim of malicious prosecution.

     For the foregoing reasons, Defendants Benoit and Laone respectfully request that their

Motion for Summary Judgment be granted.

                  THE DEFENDANTS,
                  MATTHEW BENOIT AND FRANK LAONE

                  BY:   /s/ ct05394
                       Joseph A. Mengacci, Special Counsel
                       Federal Bar Number: ct05394
                       Office of Corporation Counsel
                       235 Grand Street, 3rd Floor
                       Waterbury, Connecticut 06702
                       Phone: (203) 574-6731
                       Fax: (203) 574-8340
                       jmengacci@waterburyct.org

## CERTIFICATE OF SERVICE

     I hereby certify that on the above date a copy of the foregoing, was filed electronically

and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be

sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to

anyone unable to accept electronic filing. Parties may access this filing through the Court's

system.

                  BY:   /s/ ct05394
                       Joseph A. Mengacci

F:\New Electronic Filing System\FILE MANAGEMENT\Litigation\Police\Massimino, Keith v. Benoit, Matthew & Laone, Frank L21-022\PLEADINGS\MTD\Our MTD Memo.docx