UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEITH MASSIMINO | : | |
|     Plaintiff | : | NO: 3:21-cv-01132 (RNC) |
| | : | |
| VS. | : | |
| | : | |
| MATTHEW BENOIT AND | : | |
| FRANK LAONE | : | NOVEMBER 10, 2021 |
|     Defendants | : | |

### DEFENDANTS, MATTHEW BENOIT AND FRANK LAONE'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

The Defendants, Matthew Benoit (hereinafter, "Benoit") and Frank Laone (hereinafter, "Laone"), hereby submit their Reply to the Plaintiff's Opposition to Dismissal dated October 27, 2021. (Doc. #21)

In Point 2, the Plaintiff argues that he was detained for identification without reasonable suspicion, and was therefore free to not identify himself. The Plaintiff further contends that the defendants' claims of Qualified Immunity and probable cause for his arrest are "wrong."

In Points 2.1 and 2.2, the Plaintiff contends that once the Defendant Laone demanded he identify himself he was subjected to "a lawful order" and therefore was seized which seizure occurred in the absence of reasonable suspicion. However, an officer may ask a detainee a moderate number of questions to determine his identity and try to obtain information confirming or dispelling the officer's suspicion without a seizure occurring.

First, the Defendants contend that approaching the plaintiff, asking why he was videotaping the police station and asking for his identification did not constitute a seizure. A

police officer is free to approach a person in public and ask a few questions and such conduct, without more does not constitute a seizure United States v. Lee, 916 F.2d 814, 819 (2d Cir. 1990); Feneda v. Bostick, 501 U.S. 429, 434 (1991).  Asking the Plaintiff for his identification during the course of Terry stop, does not violate his Fourth Amendment rights. Berkemer v. McCarty, 468 U.S. 420, 439, 104 S.Ct 3138, 82 L.Ed.2d 317 (1984); Ashley v. City of Bridgeport, 2021 U.S. Dist. LEXIS 62139, 2021 WL 1215657 (D. Conn. CT 2021).

Even if Plaintiff has pled sufficient facts to support his claim that he was "seized," then the principals established for a Terry stop are applicable, and the standard of review is whether the defendant officers had "reasonable suspicion" to investigate possible criminal behavior even though there is no probable cause to make an arrest at that time.  Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct 1868, 20 L.Ed.2d 889 (1968).

As an initial matter, it is important to note that the "reasonable suspicion" standard, relatively speaking, is not a difficult standard to satisfy.  Indeed, reasonable suspicion can be established with a far lesser showing than what is required under probable cause and, even, preponderance of the evidence.  See, Kansas v. Glover, 140 S.Ct. 1183, 1187 (2020) ("Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause."); see also United States v. Rideau, 969, F.2d 1572, 1574 (5th Cir. 1992) ("The showing required to demonstrate 'reasonable suspicion' is considerably less than that which is necessary to prove probable cause.")

On this issue, the case of United States v. Santillan is instructive, 902 F.3d 49 (2d Cir. 2018). There, the Second Circuit addressed the reasonable suspicion standard and stated the following:

> The suspicion must derive from specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting wrongdoing. The reasonable suspicion standard is 'not high' and is 'less demanding than probable cause, requiring only facts sufficient to give rise to a reasonable suspicion that criminal activity **may** be afoot.' Conduct that is as consistent with innocence as with guilt may provide the basis for reasonable suspicion where there is some indication of **possible** illicit activity. (Emphasis added)

Santillan, 902 F.3d at 56.

Thus, reasonable suspicion requires only "facts sufficient to give rise to a reasonable suspicion that criminal activity **may** be afoot." Id. All that is required, then, to establish reasonable suspicion is "some indication of possible illicit activity." See, e.g., Basch v. Commissioner of Motor Vehicles, CV 97 0566879, 1997 Conn. Super. LEXIS 339, at 4-6 (Super .Feb. 7, 1997) ("In order legally to stop the plaintiff . . . it was necessary to establish that the police officer had the requisite reasonable suspicion of wrongdoing, ***but it was not necessary to establish that anything criminal had in fact occurred."***); see also Terry v. Ohio, 392 U.S. 1, 22 (1968) (recognizing that a "series of acts, each of them perhaps innocent in itself," can when "take together warrant [] further investigation"). (Emphasis added)

"An indication of possible illicit activity is properly informed by 'commonsense judgments and inferences about human behavior.' And while a reviewing court cannot merely defer to police officers' judgment in assessing reasonable suspicion, the court must view the

totality of the circumstances through the eyes of a reasonable and cautious police officer on the scene, whose insights are necessarily guided by his experience and training." <u>United States v. Singletary</u>, 798 F.3d 55, 60 (2d Cir. 2015) (internal citations omitted).

The Defendant officers' suspicions that plaintiff *may* be prepared for a bombing or a shooting, further heightened by plaintiff's refusal to provide ID, was sufficient to satisfy the "reasonable suspicion" standard.

The Plaintiff's argument is based upon the fact that he was "seized" <u>and</u> under those circumstances the Defendant officers did not have a reasonable suspicion based on the information possessed by the Defendant officers and reasonable inferences from those facts. The Plaintiff claims he had a right to refuse, to produce or otherwise identify himself. Since as the Defendants contend, the facts as alleged establish that the officers had "reasonable suspicion" to investigate, including requesting the Plaintiff produce identification, no violation of the Plaintiff's First or Fourth Amendment rights occurred.

The Plaintiff further argues that it was impossible for Laone and Benoit to have had reasonable articulable suspicion of the Plaintiff's committing a crime that does not exist. Plaintiff further argues that no statutory prohibition exists against recording or photographing the exterior of governmental buildings.

First, as noted in the Defendants' initial Memorandum of Law, on the issue of Qualified Immunity, no clearly defined right existed in the Second Circuit to videotape police activity and more specifically a police department building. Additionally, the Defendants suspicions went far beyond an unidentified individual videotaping the police department building to

include their legitimate concerns relating to their safety and the safety of the public from some potential actions which could include bombing or a shooting at the police department building.

The Defendants' inquiry of the Plaintiff's activity and conduct that is as consistent with innocence as with guilt can provide the basis for reasonable suspicion where there is some indication of possible illicit activity. Santillan, supra. The Plaintiff's refusal to identify himself in light of the Defendants' articulation to the Plaintiff of their safety concerns clearly raised the Defendants level of suspicion. The Plaintiff's assurances to the contrary notwithstanding the Defendants did not have to accept the Plaintiff's statements of denial of ill will or any other potentially illegal purpose for his conduct.

In point 2.3, the Plaintiff asserts that since the Defendants had no reasonable suspicion to detain him, the Plaintiff was not required to identify himself and his declination to do so could not generate probable cause. The Plaintiff's argument fails since reasonable suspicion did exist, in which case, the Plaintiff's refusal to identify himself constituted probable cause for his arrest for Interfering With an Officer for obstructing, resisting and hindering a police officer in the performance of his duties. Conn. Gen. Stat. §53a-167a.

The Plaintiff concedes, as he must, that probable cause for the offense of interfering with a police officer may be where a person declines to identify himself in connection with a legitimate Terry stop. (Plaintiff's Opposition to Dismissal, Doc. #21, p. 18). See also State v. Aloi, 911 A.2d, 1086, 1097, N.22 (Conn. 2007).

In Point 3.1, the Plaintiff argues that the First Amendment right does not vary with the identity of the person gathering the information. Those working as professional journalists have no preferential information access under the First Amendment whether employed as a

journalist or not.  However, whether the Plaintiff was or was not a journalist, as he represented, was one of the facts upon which the Defendants' reasonable suspicion was based.  A journalist, for example, may likely have a more legitimate reason than a lay person for his presence for which the Defendants' suspicions may be been lessened not heightened by his refusal to produce his journalist's credentials or other identification.  In the present case, for purposes of the Defendants' "reasonable suspicion," a difference between an alleged journalist and a lay person.

Further the Plaintiff argues that Qualified Immunity "does not require a case on point concerning the exact permutation of facts . . . in order to establish a clear standard for their behavior." (Plaintiff's Opposition to Dismissal, Doc. #21, p. 18)  However, although the factual situation faced by the defendants need not be identical, but must be factually analogous to the situation confronted by the defendants.  The crucial question [is] whether the official acted reasonably in the particular circumstances that he or she faced.  Plumhoff v. Rickard, 134 S.Ct. 2012, 2023 (2014).

The Supreme Court has highlighted the fact-specific nature of the inquiry as to whether the law was clearly established and the result depends on the facts of each case.  The official is entitled to Qualified Immunity unless existing precedent from a body of relevant case law and precedent, which has placed the constitutional question beyond debate.  Ashcroft v. al-Kidd, 563 US. 731, 741 (2011); see also, City of Escondido v. Emmons, 139 S.Ct. 500, 103 (2019).

Interestingly, the Plaintiff cites only federal district court cases in support of his arguments and concedes the lack of Second Circuit precedent.  Further, while trying to argue

that the facts at issue here were "foreshadowed" by other circuit court decisions, admits that the Fifth Circuit's decision in Turner does not follow the decisions of the other cited circuits. (Plaintiff's Opposition to Dismissal, Doc. #21, pp. 19-20)

As the Supreme Court noted in District of Columbia v. Wesby, 138 S.Ct. 577 (2018) it had not yet decided what precedents, other than its own could clearly establish the relevant law and granted qualified immunity based upon the absence of applicable circuit court precedent within the circuit where the alleged constitutional violation took place.

To determine whether a right is clearly established a court must look to (1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or Court of Appeals case law supports the existence of the right in question, and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful. See, Shechter v. Comptroller of City of N.Y., 79 F.3d 265,271 (2d Cir. 1996)

A government agent enjoys qualified immunity when he or she performs discretionary functions if either (1) the conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that the conduct did not violate clearly established rights. A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct. McCullough v. Wyandanch Union Free Sch. DIst., 187 F.3d 272, 278 (2d Cir. 1999) the unlawfulness must be apparent. Young v. County of Fulton, 160, F.3d 899, 903 (2d Cir. 1998 ) (citing Anderson v. Creighton, 483 U.S. 636, 640,

7

97 L.Ed.2d 523, 107 S.Ct. 3034 (1987) and Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 73 L.Ed.2d 396, 102 S.Ct. 2727 (1982))

In Point 2.2.3, the Plaintiff notes the Defendants' reference to the Fifth Circuit decision in Turner v. Driver, 848 F.3d 678, 691-2 (5th Cir. 2017) and acknowledges the Court's decision in finding that no clearly established law existed with regard to recording or filming of police.  As noted in Defendants' initial Memorandum of Law, the Turner decision was based upon the issue of a right to video police activity.  Although Turner was videotaping across the street from the police station, his claim was based upon his constitutional right to videotape police activity and not the police station.  Nonetheless, the Court in Turner held there was not even a clearly defined right to videotape police activity generally, contrary to the decision of several other circuit courts.

The Plaintiff is correct that the Court in Turner did not grant Qualified Immunity for the claimed violation of Turner's Fourth Amendment right to be free from an unlawful arrest.  However, in finding that probable cause to detain Turner in handcuffs in the back of the police cruiser, which the Court found to constitute an arrest, Turner was not formally charged, and was later released.  In Turner, not only did the court conclude that no probable cause existed to "arrest" or detain Turner, the defendant officers did not dispute that if Turner was found to have been "arrested" the defendant officers lacked probable cause.

The Plaintiff incorrectly states that the Court in Turner, denied qualified immunity for arresting Turner because the only potential reason given for Turner's arrest was his failure to identify himself and that the police cannot arrest an individual **solely** for refusing to provide identification. (Emphasis added.) (Plaintiff's Opposition to Dismissal Doc. #21, pp 12-13)

In the present case, the Plaintiff was in fact arrested and charged with Interfering with a Peace Officer not **solely** for failing to produce identification.  The Plaintiff was arrested for his conduct in obstructing, resisting and/or hindering the Defendants in the performance of their investigatory duties.

The Defendants are further entitled to Qualified Immunity even if probable cause did not exist as their actions were objectively reasonable and as a result the Plaintiff's constitutional rights were not violated.  Even assuming a violation of the Plaintiff's constitutional rights, the law was not so clearly established that the Plaintiff's conduct under all the facts and reasonable inferences from those facts constituted a violation of the Plaintiff's constitutional rights.

An officer is entitled to qualified immunity if "any reasonable officer, out of a wide range of reasonable people, who enforces the laws in this country could have determined that the challenged action was lawful.  Qualified Immunity protects all but the plainly incompetent or those who knowingly violate the law.  Figueroa v. Mazza, 825 F.3d 89, 100 (2d Cir. 2016); City and County of San Francisco v. Sheehan, 135 S.Ct. 1765, 1775-76 (2015).

**CONCLUSION**

The Defendants' Motion to Dismiss should be granted as to all claims of the Plaintiff as the Defendants are entitled to Qualified Immunity.

THE DEFENDANTS,
MATTHEW BENOIT AND FRANK LAONE

BY:  /s/ ct05394
     Joseph A. Mengacci, Special Counsel
     Federal Bar Number: ct05394
     Office of Corporation Counsel
     235 Grand Street, 3rd Floor
     Waterbury, CT 06702
     Phone: (203) 574-6731
     Fax: (203) 574-8340
     jmengacci@waterburyct.org

## CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of the foregoing, was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

BY:  /s/ ct05394
     Joseph A. Mengacci

F:\New Electronic Filing System\FILE MANAGEMENT\Litigation\Police\Massimino, Keith v. Benoit, Matthew & Laone, Frank L21-022\PLEADINGS\Our Reply to Pltf's Obj to our MTD.docx